IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BOBBY CULLUM and WON SON CULLUM, individually, and as representatives of the ESTATE OF TAVIN SO CULLUM, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. SA-12-CV-49-DAE |
| vs. | ) ) | |
| J. SIEMENS, individually; J. GONZALES, individually; J. REYES, individually; and O. MORENO, individually; | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) DENYING DEFENDANTS' FIRST AMENDED MOTION TO
DISMISS; (2) GRANTING DEFENDANTS' ORAL MOTION TO DISMISS
PLAINTIFFS' § 1983 CLAIMS UNDER THE FIFTH AND EIGHTH
AMENDMENTS; (3) DENYING DEFENDANTS' ORAL MOTION TO DISMISS
PLAINTIFFS' INDIVIDUAL CLAIMS; (4) GRANTING PLAINTIFFS LEAVE
TO FILE SECOND AMENDED COMPLAINT

Plaintiffs Bobby Cullum and Won Son Cullum (collectively,

"Plaintiffs") brought suit against the police officers involved in the shooting death of

their son, Tavin So Cullum ("Tavin").  On October 9, 2013, the Court heard

argument regarding the First Amended Motion to Dismiss filed by Defendants J.

Siemens and J. Gonzales ("Defendants").  (Dkt. # 17.)  At the hearing, Defendants

moved to dismiss Plaintiffs' § 1983 claims under the Fifth and Eighth Amendments.

Defendants also moved to dismiss Plaintiffs' individual § 1983 claims for wrongful

death.  Upon careful consideration of the supporting and opposing memoranda as

well as the parties' arguments at the hearing, the Court: (1) **DENIES** Defendants'

First Amended Motion to Dismiss; (2) **GRANTS** Defendants' oral Motion to

Dismiss Plaintiffs' § 1983 claims under the Fifth and Eighth Amendments; (3)

**DENIES** Defendants' oral Motion to Dismiss Plaintiffs' individual claims; and

(4) **GRANTS** Plaintiffs leave to file a Second Amended Complaint clarifying their

causes of action.

<u>BACKGROUND</u>

For purposes of Defendants' First Amended Motion to Dismiss, the

Court accepts the following well-pleaded allegations as true.  <u>See</u> <u>In re Katrina</u>

<u>Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (holding that on a motion

to dismiss, the court must view all well-pleaded facts in a light most favorable to the

plaintiff).

On December 2, 2010, San Antonio Police responded to a fire and

domestic disturbance at the home of Bobby and Won Son Cullum in San Antonio,

Texas.  (Dkt. # 15 ¶ 9.)  Law enforcement officers had been called to this home on

several prior occasions.  (<u>Id.</u>)  When police arrived on the scene, they discovered

Tavin on his parents' roof holding a gun.  (<u>Id.</u>)  Tavin managed to jump from the

roof and flee the scene on his motorcycle.  (Id.)  Police pursued Tavin for approximately thirty minutes as he traveled west across two counties on I-10.  (Id. ¶¶ 9–10.)  The chase ranged in speed from twenty to fifty miles per hour.  (Id. ¶ 10.)

While fleeing, Tavin directed his gun behind him in the direction of police on a couple of occasions, but did not fire.  (Id.)  However, for most of the chase, Tavin pointed the gun under his chin and on one occasion pointed it towards the sky.  (Id.)  Tavin eventually stopped, got off his motorcycle, and let it fall to the ground, while holding the gun in his right hand.  (Id. ¶ 11.)  Then Tavin walked backwards and raised his left arm with his palm face-up.  (Id. ¶¶ 11–12.)  Shortly thereafter, police fatally shot Tavin.[1]  (Id.)

On January 18, 2012, Plaintiffs filed a § 1983 claim alleging that the police used excessive and deadly force against Tavin.  (Dkt. # 1.)  Defendants filed a Motion to Dismiss on May 8, 2012.  (Dkt. # 5.)  Defendants primarily argued that dismissal was warranted because Defendants Gonzales and Siemens were entitled to qualified immunity.  (Id. at 6–8.)  On February 20, 2013, the Court denied Defendants' motion, reasoning that "Officers Siemens and Gonzales shot and killed

---

[1]     Defendants insist that Tavin did not obey the officers' commands to drop his weapon and that following the shot by the first police officer, Tavin then turned his gun on himself, shooting himself in the head.  Upon the discharge of Tavin's gun, additional officers discharged their weapons resulting in three additional wounds to Tavin, for a total of five.  Because the Court must accept Plaintiffs' well-pleaded facts as true, even where Defendants have pleaded contradictory allegations, see Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996), the Court does not take either allegation into account in its analysis.

Tavin So Cullum when he was surrendering and presented no threat to the officers, and thus the complaint is sufficient to state an excessive force and wrongful death claim pursuant to § 1983." (Dkt. # 14.)

That same day, Plaintiffs filed a First Amended Complaint. (Dkt. # 15.) Defendants filed the instant First Amended Motion to Dismiss on March 6, 2013. (Dkt. # 18.)

## DISCUSSION

I.    Defendants' First Amended Motion to Dismiss

Although the instant Motion is styled as "Defendants' J. Siemens and J. Gonzales, First Amended Fed. R. Civ. P. 12(b) Motion to Dismiss," Defendants' Motion asserts the same qualified immunity arguments as their earlier Motion to Dismiss. For example, in Defendants' first Motion, they argued that "Plaintiffs [could not] establish a violation of any clearly established right," and "even if Plaintiffs could establish such a violation, qualified immunity protect[ed] both Officers, as their conduct was objectively reasonable in light of the circumstances before them." (Dkt. # 5 ¶ 21.) In the instant Motion, Defendants repeat that "Plaintiffs cannot establish a violation of any clearly established right," and "even if Plaintiffs could establish such a violation, qualified immunity protects both Officers, as their conduct was objectively reasonable in light of the circumstances before them." (Dkt. # 18 ¶ 21.) This practice continues throughout both Motions'

"Statement of Relevant Facts," "Standard for Federal Rule 12(b)(6)," and "Arguments and Authorities" sections.

Presumably Defendants believe that Plaintiffs' First Amended Complaint necessitated filing another—though identical—Motion to Dismiss. Defendants are incorrect. Had Plaintiffs' First Amended Complaint added new claims or new defendants, then reasserting the qualified immunity defense for the new claims or the new defendants may have been warranted. But Plaintiffs' First Amended Complaint only removed a state-law cause of action for assault and claims against the City of Boerne and Defendant John Doe. (Compare Dkt. # 1, with Dkt. # 15.) In the alternative, had Plaintiffs filed a First Amended Complaint prior to the Court's ruling on Defendants' first Motion to Dismiss, and had the Court held that the First Amended Complaint rendered Defendants' Motion to Dismiss moot, then refiling a motion to dismiss would be proper. Here, the Court already ruled on the merits of Defendants' qualified immunity claim. In short, although there are limited circumstances where refiling the same motion to dismiss is permissible, under the present circumstances it makes little, if any, sense. However, despite the Court's disapproval of this practice, the Court construes Defendants' First Amended Motion to Dismiss as a motion for reconsideration.

a.     Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically contemplate a

5

motion for reconsideration.  See St. Paul Mercury Ins. Co. v. Fair Grounds Corp., 123 F.3d 336, 339 (5th Cir. 1997).  Such a motion, however, may be considered under Rule 54(b), which permits courts to revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . before the entry of judgment." Fed. R. Civ. P. 54(b); accord eTool Dev., Inc. v. Nat'l Semiconductor Corp., 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (holding that under Rule 54(b), a court retains the power to revise an interlocutory order before entry of a final judgment).  "Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order 'for any reason it deems sufficient.'"  United States v. Renda, 709 F.3d 472, 479 (5th Cir. 2013) (quoting Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210–11 (5th Cir. 2010)).

Although a court has broad discretion to grant a motion for reconsideration under Rule 54(b), considerations similar to those under Rule 59(e) inform a Rule 54(b) analysis.  See, e.g., Valles v. Frazier, No. SA-08-CA-501-XR, 2009 WL 4639679, at *2 (W.D. Tex. Nov. 30, 2009).  To prevail on a Rule 59(e) motion, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear or manifest error of law or fact or to prevent manifest injustice.  In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002).

6

Because Defendants present a First Amended Motion to Dismiss that is indistinguishable from the first Motion to Dismiss, Defendants' instant Motion must be denied.  Motions for reconsideration are not

> vehicles for relitigating old issues, . . . securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'; rather, the standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.

Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).  "Motions to reconsider 'based on recycled arguments only [serve] to waste the resources of the court,' and are not the proper vehicle to '[rehash] old arguments or [advance] legal theories that could have been presented earlier.'"  Krim v. pcOrder.com, Inc., 212 F.R.D. 329, 331 (W.D. Tex. 2002) (quoting Tex. Instruments v. Hyundai Elec. Indus., 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999)).  Instead, motions to reconsider serve narrow purposes: to correct manifest errors of law or fact, to instruct the court on an intervening change in law, or to present newly discovered evidence.  Id. Defendants' instant Motion does not fulfill any of the aforementioned purposes. Defendants do not proffer new evidence or new law.  Therefore, the Motion for Reconsideration must be denied.

      b.    Merits of Defendants' First Amended Motion to Dismiss

Even considering the merits of Defendants' First Amended Motion to

Dismiss, the Court is not convinced the result should be any different.  The facts

viewed in a light most favorable to Plaintiffs establish that Defendants' actions were

not objectively reasonable and violated a clearly established constitutional right.

Thus, at the motion to dismiss stage, Defendants are not entitled to qualified

immunity.

1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a

complaint for "failure to state a claim upon which relief can be granted."  On a

motion to dismiss, the court reviews the contents of the complaint and matters

properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

551 U.S. 308, 322 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint

must plead "enough facts to state a claim to relief that is plausible on its face."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully.  Id.

The ultimate inquiry is whether the complaint states a valid claim when

8

viewed in the light most favorable to the plaintiff.  However, the court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions.'" R2 Inv. LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005) (citation omitted).

>            2.      Qualified Immunity

Section 1983 provides a civil cause of action for persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by the actions of a person or entity operating under color of state law.  42 U.S.C. § 1983.  "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 284 (5th Cir. 2002).

"One of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit." Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Indeed, the Supreme Court has made clear that the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [would] be

9

resolved prior to discovery." Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987).

To determine whether a defendant is entitled to qualified immunity, courts conduct the two-prong analysis promulgated by Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009).  As stated in Pearson, courts are permitted to exercise their sound discretion in deciding which of Saucier's two prongs should be addressed first in light of the circumstances in the particular case at hand.  555 U.S. at 236 (holding that the Saucier procedure "need not be followed in any particular sequence").

The first prong the Saucier analysis asks whether, taken in the light most favorable to a plaintiff, the facts alleged show the official's conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  If the alleged conduct did not violate a constitutional right, the Saucier inquiry ceases because there is no constitutional violation to necessitate asserting qualified immunity.  Saucier, 533 U.S. at 201.  But if the alleged conduct did violate a constitutional right, then the court turns to the second prong of the Saucier analysis and must ask whether the constitutional right was clearly established at the time of the conduct.  Id.

When a defendant asserts a qualified immunity defense under the Saucier two-prong test, the usual burdens associated with a motion to dismiss shift. Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).  A defendant "must initially plead his good faith and establish that he was acting within the scope of his

discretionary authority." Id. (citing Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir. 1982)).  Once a defendant raises a good faith qualified immunity defense, it is incumbent upon the plaintiff to negate the defendant's claims of qualified immunity by satisfying Saucier's two-prong test.  Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009).

Therefore, the Court will answer two questions: (1) whether Defendants' alleged conduct violated Tavin's constitutional rights, and if so (2) whether those rights were clearly established at the time of the shooting.

### a.    The Constitutional Violation

Given that Pearson relaxed the sequence of the Saucier two-prong qualified immunity analysis, see 555 U.S. at 236, the Court first considers whether Plaintiffs have met their burden of showing that Defendants'[2] actions violated Tavin's constitutional rights.

Plaintiffs allege that Defendants used excessive force in violation of the Fourth Amendment right against unreasonable seizure.  See Colston v. Barnhart, 130 F.3d 96, 102 (5th Cir. 1997) ("The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against

---

[2]     Because Plaintiffs' First Amended Complaint does not specify, and Defendants do not identify, which of the officers fatally shot Tavin, the Court is unable to make an individualized determination as to each Defendant.

11

citizens.").  "To prevail on an excessive force claim, a plaintiff must establish: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'"  Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007) (quoting Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005)).  Because Tavin died as a result of Defendants' alleged conduct, and his death clearly constitutes an "injury," the Court's inquiry will focus on whether Defendants' conduct was clearly unreasonable.  See Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008) (holding that because there was no dispute that the plaintiff suffered an injury, "[t]he relevant question . . . [was] whether the force was 'clearly excessive' or 'clearly unreasonable'").

"There are few, if any, bright lines for judging a police officer's use of force . . . ."  Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 411 (5th Cir. 2009).  Courts "must slosh [their] way through the factbound morass of 'reasonableness.'"  Id. (quoting Scott v. Harris, 550 U.S. 372, 382 (2007)).  When assessing the individual facts of a particular case, courts review "the reasonableness of an officer's conduct 'objectively,' that is, without reference to the subjective intent or motivation that underlies the officer's conduct."  Id. (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  An officer's acts are objectively reasonable unless reasonable officials in the officer's circumstances would have then known that the officer's conduct violated the plaintiff's asserted constitutional rights.  Thompson v. Upshur Cnty.,

245 F.3d 447, 457 (5th Cir. 2001).

Assessing the reasonableness of a police officer's use of force also involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Lytle, 560 F.3d at 411 (quoting Graham, 490 U.S. at 396). This balancing requires "attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (emphasis added) (quoting Graham, 490 U.S. at 396).

A reviewing court "must never allow the theoretical, sanitized world of [its] imagination to replace the dangerous and complex world that policemen face every day." Stroik v. Ponseti, 35 F.3d 155, 158–59 (5th Cir. 1994) (quoting Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)); see also Hathaway v. Bazany, 507 F.3d 312, 322 (5th Cir. 2007) ("That [an officer's] decision is now subject to second-guessing—even legitimate second-guessing—does not make [the officer's] actions objectively unreasonable given the particular circumstances of the shooting."). The court must "account for the difficult and often split-second decisions that police officers must make in carrying out their duties." Lytle, 560 F.3d at 411.

If an officer has "probable cause to believe that a criminal suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennessee v. Garner, 471 U.S. 1, 11–12 (1985); see also Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003) ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."). But "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend the suspect does not justify the deadly force to do so." Id. at 11 (emphasis added). As stated by then Chief Judge Edith H. Jones of the Fifth Circuit Court of Appeals, a court's "inquiry focuses not on the general standard—when may an officer use deadly force against a suspect?—but on the specific circumstances of the incident—could an officer have reasonably interpreted the law to conclude that the perceived threat posed by the suspect was sufficient to justify deadly force?" Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 383 n.1 (5th Cir. 2009) (citing Brosseau v. Haugen, 543 U.S. 194, 199–200 (2004)).

In Lytle, the Fifth Circuit held that the threat presented at the time the officer used deadly force was not so great as to make the force objectively reasonable. 560 F.3d at 417. In that case, Bexar County Sheriff's Deputy Robert O'Donnell responded to a report that a complainant's ex-boyfriend had made violent

14

threats.  Id. at 407.  The complainant stated that her ex-boyfriend was driving a stolen, primer-gray Ford Taurus.  Id.  Once O'Donnell discovered the Taurus, he began to follow it and eventually activated his emergency lights after a traffic violation.  Id.  Instead of stopping, the Taurus accelerated.  Id.  After a brief chase, the Taurus collided with another vehicle.  Id.  The Taurus then began backing up toward O'Donnell's police cruiser.  Id.  The parties disputed what happened immediately thereafter, but both agreed that O'Donnell subsequently fired two shots at the Taurus.  Id. at 407–08.  According to the plaintiff, the Taurus was three to four houses away from O'Donnell's police cruiser when O'Donnell fired the two shots.  Id. at 412.  Under O'Donnell's theory, he fired the two shots as or immediately after the Taurus was backing up toward him.  Id.  One of O'Donnell's two shots fatally wounded Heather Lytle, a backseat passenger in the Taurus.  Id. at 408.  The district court held that a genuine issue of material fact precluded summary judgment on O'Donnell's claim of qualified immunity because "the parties disputed the direction and distance that the Taurus had traveled at the moment O'Donnell fired."  Id.

On appeal, O'Donnell asserted that his use of force was a reasonable response to the threat of harm that the Taurus posed to himself and the public.  Id. at 412.  The Fifth Circuit disagreed, finding that a fact question existed regarding whether the Taurus posed a threat of harm at the time O'Donnell fired.  Id.  The

court noted that "if the facts were as O'Donnell alleges—that is, he fired as or immediately after the Taurus was backing up toward him—he would likely be entitled to qualified immunity." Id.  But, the court emphasized that according to the plaintiff, the Taurus was three or four houses away when the shot was fired, and as such, "a jury could conclude that any immediate threat to O'Donnell had ceased." Id. at 413.  The court concluded that "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." Id. (citing Abraham v. Raso, 183 F.3d 279, 294 (3d Cir. 1999) ("A passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect."); Ellis v. Wynalda, 999 F.2d 243, 247 (7th Cir. 1993) ("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.")).  Because some noticeable time had passed since the threat, the court concluded that O'Donnell's decision to fire at the Taurus was unreasonable, and thus did not warrant qualified immunity at the summary judgment stage. Id. at 414.

   In Ellis, the Seventh Circuit addressed facts similar to those in Lytle. 999 F.2d at 247.  There, Ellis, a suspect, threw a mesh bag weighing four to five pounds filled with plastic vials towards officer Wynalda. Id. at 245, 247.  The court found that "[i]f Wynalda feared that the bag might be heavy and might knock the gun from his hand or provide an opportunity for Ellis to draw a concealed weapon,

he would have been justified in firing at that moment, but not after the lightweight

bag fell to the ground without injuring him and Ellis had turned and run." Id. at 247.

The court summarized:

> In other words, if Wynalda had shot Ellis while Ellis was throwing the
> bag at him, that would have been permissible as the action of a
> reasonable officer facing a dangerous felon.  Even if he shot Ellis after
> the bag had hit him but while he was still disoriented and off-balance,
> his action could be reasonable, because he would not know, for
> example, if Ellis was going to attack him or was reaching for a weapon.
> In this case, however, Wynalda was struck by the lightweight bag and
> then observed Ellis back away, turn and run. . . . When an officer faces
> a situation in which he could justifiably shoot, he does not retain the
> right to shoot at any time thereafter with impunity.

Id.

In contrast, the Fifth Circuit in Ramirez held that an officer's use of

force was reasonable when a suspect brought his hands together, while holding a

gun in his right hand, because the threat of force was imminent.  542 F.3d at 131.  In

that case, a Kerrville Police Detective contacted Ramirez regarding a sexual contact

charge.  Id. at 126.  Ramirez told the detective that "he would not go back to jail,

that he had a .22 caliber handgun, and that he would 'take care of the problem.'"  Id.

The detective interpreted Ramirez's statements to mean that Ramirez intended to

commit suicide, so the detective sent uniformed officers to Ramirez's home.  Id. at

127.  When the officers arrived, Ramirez was driving away.  Id.  The officers

instructed Ramirez to pull over, but Ramirez continued driving for some time, albeit

under the speed limit, before finally stopping on the side of the road.  Id.  The

officers ordered Ramirez to exit the vehicle and keep his hands where they could be seen.  <u>Id.</u>  Instead of fully complying with the officers' directions, Ramirez got out of the vehicle and stood profile to the officers.  <u>Id.</u>  Ramirez stood with his arms at his sides while holding a handgun in his right hand.  <u>Id.</u>  At one point, Ramirez put his hands on his hips, and then later brought his hands together in front of his waist, as if to clasp the gun with both hands.  <u>Id.</u>  As Ramirez's hands came together, an officer fired a single round, wounding Ramirez.  <u>Id.</u>

The Fifth Circuit found that the officer's use of force was objectively reasonable, warranting qualified immunity.  <u>Id.</u> at 131.  The court first addressed the magistrate judge's finding that Ramirez had never raised his weapon nor aimed it at the officers.  <u>Id.</u> at 129.  The court found the magistrate judge's logic unconvincing because an officer could have reasonably believed that Ramirez's conduct of bringing his hands together with the gun in his right hand was "defiant and threatening."  <u>Id.</u> at 131.  The court concluded that "Ramirez brought his hands together in what we believe could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers," and as such, the officer's decision to use deadly force was reasonable.  <u>Id.</u>

Likewise, in <u>Ballard v. Burton</u>, the Fifth Circuit held that an officer's use of deadly force was reasonable when a "mentally disturbed person," Ballard, had "refused to put down his rifle, discharged the rifle into the air several times

while near officers, and pointed it in the general direction of law enforcement

officers."  444 F.3d 391, 402–03 (5th Cir. 2006).  The court found that "regardless

of the direction in which Ballard pointed the rifle just before he was shot, a

reasonable officer in these circumstances would have reason to believe that Ballard

posed a threat of serious harm to himself or to other officers."  Id. at 403.  The court

noted that "a reasonable officer in these circumstances may or may not have known

or calculated how many rounds had been fired or how many rounds remained in

Ballard's rifle."  Id.

        The Court acknowledges that the facts and circumstances of this case

certainly present a close call.  However, the Court finds that the instant facts are

more closely analogous to the facts presented in Lytle and Ellis, rather than to those

in Ramirez and Ballard.  As the Ellis court made clear, there is an important

distinction between using deadly force while the threat is still present and using

deadly force after the threat has dissipated.  Just as the Taurus in Lytle was a threat

when backing up towards O'Donnell, Tavin posed a threat of serious physical harm

at several times throughout the day's events, including when Tavin held a gun while

he was on his parents' roof and when he engaged in a police chase while pointing

the gun in the direction of the officers.  At those times, there was a credible threat of

immediate physical harm that would have justified the use of deadly force.  See,

e.g., Mace, 333 F.3d at 624 ("Use of deadly force is not unreasonable when an

19

officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others.").  But as in Lytle, where the Taurus drove away from the officer, and thus the threat of physical harm to the officer dissipated, as soon as Tavin got off his motorcycle, let the motorcycle fall to the ground, and backed away from the officers with his left palm face-up and the gun pointed towards the ground, a reasonable fact-finder could likewise conclude that the threat had ceased.  In fact, drawing all reasonable inferences in favor of Plaintiffs, as the Court is required to do on a motion to dismiss, Tavin's gesture could have been a sign of acquiescence, or even surrender, to police authority.  Assuming Tavin was not a threat at the time Defendants used deadly force, Defendants' use of deadly force was clearly unreasonable, viewing the facts in the light most favorable to Plaintiffs.  See Ellis, 999 F.2d at 247 (recognizing that deadly force is not justified when there is no immediate threat).

        The Court is cognizant of Defendants' argument that backing away while retaining a gun at one's side could potentially have been interpreted as a continuing threat by the officers as was the gesture in Ramirez.  But this is unlikely given that Tavin raised his left hand palm-up in a "stop" gesture.  Furthermore, unlike in Ramirez, Tavin never "brought his hands together . . . as if to grip the handgun with both hands in preparation to aim it at the officers"—an action the Ramirez court found to be the lynchpin regarding whether the officer's deadly force

was reasonable.  542 F.3d at 131.  Instead, Tavin raised the palm of his left hand—

the hand without the gun—in what could be construed as a submissive gesture.

Tavin's movements were not "defiant or threatening" as in Ramirez.  See id.

Tavin's gesture, although in temporal proximity to the threat Tavin posed, persuades

this Court that any deadly force used after the threat ceased was unreasonable.  See

Lytle, 560 F.3d at 413 ("[F]orce justified at the beginning of an encounter is not

justified even seconds later if the justification for the initial force has been

eliminated." (quoting Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005))).

Ballard is likewise distinguishable, because in that case the suspect

demonstrated such a proclivity to fire his rifle in the direction of officers that the

threat to the officers was still present.  444 F.3d at 402.  Unlike in Ballard where the

officers faced an ongoing threat of harm, the present facts, taken in the light most

favorable to Plaintiffs, suggest that the perceived threat deescalated.  Admittedly,

Tavin engaged in a chase down I-10 at speeds of twenty to fifty miles per hour while

holding a gun, but when Tavin got off his motorcycle and backed away from the

officers with his left arm and palm face-up, the circumstances changed.  Reading the

facts in the light most favorable to Plaintiffs, the Court finds that Tavin could have

been assenting to police authority.  As such, the Court does not find Tavin's actions

after he got off the motorcycle and backed away from the officers with his left palm

face-up to be "so menacing . . . that any use of force in an attempt to stop it would

21

be objectively reasonable as a matter of law." Lytle, 560 F.3d at 416.  Although

Tavin's threat of harm earlier in the chain of events would weigh in favor of finding

Defendants' conduct reasonable, the threat was not so great, at least under Plaintiffs'

version of the facts, that Defendants' conduct is beyond question.  See id.; see also

Garner, 471 at 11 ("[W]here the suspect poses no immediate threat to the officer and

no threat to others, the harm resulting from failing to apprehend the suspect does not

justify the deadly force to do so." (emphasis added)).

   The Court's holding is due in large part to the fact a jury is better

poised to answer the Fourth Amendment reasonableness inquiry.  Whether Tavin's

actions suggested surrender and whether Defendants reasonably responded to

Tavin's actions are fact questions apt for a jury determination.  As the Fifth Circuit

has instructed, "when determining whether the officer's alleged conduct violated the

constitutional right to be free from unreasonable seizures, we must remain mindful

of the role that the jury can play in this determination."  Id.  In fact, "the

reasonableness of an officer's conduct under the Fourth Amendment is often a

question that requires the input of a jury."  Lytle, 560 F.3d at 411.  This is especially

true in "cases where the officer's conduct is less clear and an assessment of

reasonableness mandates a number of factual inferences."  Id.

   The Court is cognizant of the fact that Defendants dispute what

occurred and what led them to shoot Tavin.  This dispute creates a genuine question

of fact that goes to the issue of qualified immunity and thus further bars the Court

from granting Defendants' motion.  C.f. Shelton v. Wise, 306 F. App'x 60, 61 (5th

Cir. 2009) (affirming district court's denial of summary judgment because genuine

issues of material fact existed as to whether the defendants used excessive force).

        Because the Court finds that when viewing the facts in the light most

favorable to Plaintiffs, Tavin's threat of force could be said to have ceased at the

time Defendants used deadly force.  Thus Tavin did not present an immediate threat,

and Defendants' subsequent use of deadly force was unreasonable.  As a result, the

Court finds that Plaintiffs have met their burden of demonstrating a violation of a

constitutional right under the first prong of the Saucier qualified immunity analysis.

        b.    The Clearly Established Right

        Saucier's second prong asks whether the relevant constitutional right

was clearly established at the time of the violation.  Whether a right is clearly

established entails assessing whether prior court decisions gave "reasonable warning

that the conduct at issue violated constitutional rights."  Kinney v. Weaver, 367 F.3d

337, 350 (5th Cir. 2004) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).

"Despite [a] lack of precedent with exact facts, the law can be clearly established

from the facts of even factually distinguishable cases . . . ."  Aguilar v. Robertson,

512 F. App'x 444, 447 (5th Cir. 2013).

        As the court in Lytle explained, a finding that a defendant used

unreasonable deadly force when a suspect did not pose a threat of harm does not mandate "dwell[ing] upon the [clearly established right] issue." 560 F.3d at 417. That is because "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." Id. (citing Kirby v. Duva, 530 F.3d 475, 483–84 (6th Cir. 2008)). In fact, the United States Supreme Court "made plain" in Garner that "deadly force cannot be used against an escaping suspect who does not pose an immediate danger to anyone." Kirby, 530 F.3d at 483 (discussing Garner, 471 U.S. at 11–12). Given these warnings in the case law, an officer using deadly force when a suspect does not pose a sufficient threat of harm or immediate danger would have had "reasonable warning that the conduct at issue violated constitutional rights." Kinney, 367 F.3d at 350.

Because the Court concludes that Tavin did not pose a sufficient threat at the time Defendants used deadly force, Plaintiffs have met their second burden under Saucier by showing the right in question was clearly established.

In conclusion, having found Tavin's constitutional right clearly established and Defendants' use of deadly force unreasonable when viewed in the light most favorable to Plaintiffs, the Court finds that Defendants are not entitled to qualified immunity at this time. The Court's holding does not, however, necessarily

preclude a later finding that qualified immunity is warranted.  The Court's qualified

immunity analysis may change with additional evidence submitted at the summary

judgment stage.  See McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir.

2002) ("The legally relevant factors bearing upon the [Saucier] question will be

different on summary judgment than on an earlier motion to dismiss.  At the motion

to dismiss stage, it is the defendant's conduct as alleged in the complaint that is

scrutinized for 'objective legal reasonableness.'  On summary judgment, however,

the plaintiff can no longer rest on the pleadings . . . and the court looks to the

evidence before it (in the light most favorable to plaintiff) when conducting the

[Saucier] inquiry." (internal quotation marks and citations omitted)).  However, at

the summary judgment stage, Defendants must establish that a genuine issue of

material fact does not exist.  See Lytle, 560 F.3d at 411 (holding that it is only when

"facts are undisputed and no rational factfinder could conclude that the officer acted

unreasonably" that a reviewing court can conclude that an officer acted reasonably

as a matter of law).

II.    Motion to Dismiss Plaintiffs' § 1983 Claims under the Fifth and Eighth
       Amendments

              At the hearing, Defendants moved to dismiss Plaintiffs' § 1983 claims

under the Fifth and Eighth Amendments.  Plaintiffs' counsel agreed to dismiss the

Fifth and Eighth Amendment claims, conceding that Plaintiffs' claims derived from

an alleged excessive amount of force under the Fourth Amendment as applied to

state actors through the Fourteenth Amendment.  Therefore, the Court agrees with Defendants that dismissal is appropriate for Plaintiffs' Fifth and Eighth Amendment § 1983 claims.

III.   <u>Motion to Dismiss Plaintiffs' Individual § 1983 Claims</u>

In addition to the above oral motion, Defendants moved to dismiss Plaintiffs' individual wrongful death claims because Plaintiffs cannot state a § 1983 claim individually for any alleged deprivations of their son's constitutional rights.

Section 1983 does not explicitly set forth an action for wrongful death where a person is killed by a state actor.  In such an absence, courts generally use federal common law to "fill in the gaps" in a statute that is consistent with the statute's purpose.  <u>See</u> <u>Brunett v. Grattan</u>, 468 U.S. 42, 47–48 (1984).  But under 42 U.S.C. § 1988, if no suitable federal rule exists, federal courts are directed to rely on state law, to the extent the applicable state law is not inconsistent with federal law. <u>Brunett</u>, 468 U.S. at 48.

The Fifth Circuit has specifically held that § 1988 incorporates state-law wrongful death remedies into § 1983, allowing plaintiffs to recover under § 1983 for their own injuries that result from a violation of their relatives' constitutionally-secured liberty interests.  <u>Rhyne v. Henderson Cnty.</u>, 973 F.2d 386, 390–91 (5th Cir. 1992) (allowing a parent's recovery under § 1983 for her injury caused by the state's deprivation of her son's constitutionally-secured liberty

26

interests); see also Hobart v. City of Stafford, 784 F. Supp. 2d 732, 745 (S.D. Tex. 2011) ("The Fifth Circuit has clearly held that those 'within the class of people entitled to recover under Texas law for the wrongful death of a child' are eligible 'to recover under § 1983 for [their] own injuries resulting from the deprivation of [their child's] constitutional rights.'" (quoting Rhyne, 973 F.2d at 391)).

To recover under this individual theory, a plaintiff must be a protected party under a state statute that is incorporated by § 1988.  Texas law makes clear that the parents of the deceased are eligible beneficiaries in a wrongful death action. Hobart, 784 F. Supp. 2d at 745 (citing Tex. Civ. Prac. & Rem. Code § 71.004(a)); see also Valle v. City of Houston, 613 F.3d 536, 541 (5th Cir. 2010) (noting that if the parties had a son, the parents would have standing under Texas law to recover wrongful death damages on behalf of themselves and all others entitled to recover under the wrongful death statute).  Accordingly, because § 1988 incorporates Texas wrongful death claims into a § 1983 cause of action, the Court finds that Plaintiffs have standing to bring a wrongful death claim on behalf of themselves individually under § 1983.

Defendants are correct, however, that Plaintiffs' First Amended Complaint only hints at Plaintiffs' individual claims for wrongful death.  For example, the First Amended Complaint's caption reads: "BOBBY CULLUM and WON SON CULLUM, Individually and as Representatives of the ESTATE OF

TAVIN SO CULLUM."  (Dkt. # 15.)  And Plaintiffs seek damages typically associated with wrongful death (e.g., loss of companionship).  (Id. at 7.)  However, Plaintiffs' First Amended Complaint states "First Claim for Relief - - § 1983" and then discusses only the Estate of Tavin So Cullum's cause of action without any reference to Plaintiffs' individual claims.  (Id. at 5.)

   Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  It is insufficient to state a § 1983 cause of action generally if Plaintiffs want to pursue two causes of action, even if both actions derive from the alleged use of excessive force under § 1983.  There are two causes of action available to Plaintiffs under § 1983 (through § 1988's incorporation of state-law remedies): (1) a survival action brought by the deceased's estate to redress the deceased's own injuries, and (2) a wrongful death action brought by the survivors of the deceased to compensate themselves for their loss of future pecuniary benefits, loss of inheritance, mental anguish, and loss of society and companionship.  See Diaz ex rel. Diaz v. Mayor of Corpus Christi, 121 F. App'x 36, 38–39 (5th Cir. 2005) (describing a parent's two causes of action under § 1983 for the death of his son).  Given Rule 8(a)(2)'s command for a "short and plain statement of [a] claim showing that the pleader is entitled to relief," Plaintiffs must specifically identify each claim entitling them to relief.

At the hearing, Plaintiffs conceded that there may be potential deficiencies in their pleadings and asked the Court for leave to file a Second Amended Complaint.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  The Federal Rules "permit liberal amendment to facilitate determination of claims on the merits and prevent litigation from becoming a technical exercise in the fine points of pleading." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).  The Fifth Circuit considers five factors in determining whether to grant a party leave to amend a complaint: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.  Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  If none of the aforementioned factors are present, leave should be "freely given."  Foman, 371 U.S. at 182.

The Court finds that none of the factors listed in Rosenzweig are implicated in Plaintiffs' request to amend their First Amended Complaint.  Instead, given the confusion over the specific causes of action asserted in Plaintiffs' First Amended Complaint, the Court grants Plaintiffs leave to file a Second Amended Complaint to clarify the exact causes of action they wish to pursue.

<u>CONCLUSION</u>

For the foregoing reasons, the Court: (1) **DENIES** Defendants' First Amended Motion to Dismiss; (2) **GRANTS** Defendants' oral Motion to Dismiss Plaintiffs' § 1983 claims under the Fifth and Eighth Amendments; (3) **DENIES** Defendants' oral Motion to Dismiss Plaintiffs' individual claims; and (4) **GRANTS** Plaintiffs leave to file a Second Amended Complaint clarifying their causes of action.

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 25, 2013.

_____

David Alan Ezra
Senior United States Distict Judge