UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BOBBY CULLUM and WON SON CULLUM, individually, and as representatives of the ESTATE OF TAVIN SO CULLUM, | § § § § § § § § § § § § § § § § | NO. SA-12-CV-49-DAE |
| Plaintiffs, | | |
| vs. | | |
| J. SIEMENS, individually; J. GONZALES, individually; J. REYES, individually; and JOHNNY MORENO, individually; | | |
| Defendants. | | |

ORDER DENYING DEFENDANTS' REYES AND MORENO'S RULE 12(b)(4)&(5) MOTION TO DISMISS WITHTOUT PREJUDICE

Plaintiffs Bobby Cullum and Won Son Cullum (collectively, "Plaintiffs") brought suit against the police officers involved in the shooting death of their son, Tavin So Cullum ("Tavin"). On February 7, 2014, the Court heard argument regarding Defendants Reyes's and Moreno's Rule 12(b)(4)&(5) Motion to Dismiss (Dkt. # 44). Upon careful consideration of the supporting memoranda as well as the parties' arguments at the hearing, the Court **DENIES** Defendants' Rule 12(b)(4)&(5) Motion to Dismiss **WITHOUT PREJUDICE**.

1

BACKGROUND

I.      Factual Background

On December 2, 2010, San Antonio Police responded to a fire and domestic disturbance at the home of Bobby and Won Son Cullum in San Antonio, Texas. (Dkt. # 15 ¶ 9.) Law enforcement officers had been called to this home on several prior occasions. (Id.) When police arrived on the scene, they discovered Tavin on his parents' roof holding a gun. (Id.) Tavin managed to jump from the roof and flee the scene on his motorcycle. (Id.) Police pursued Tavin for approximately thirty minutes as he traveled west across two counties on I-10. (Id. ¶¶ 9–10.) The chase ranged in speed from twenty to fifty miles per hour. (Id. ¶ 10.)

While fleeing, Tavin directed his gun behind him in the direction of police on a couple of occasions, but did not fire. (Id.) However, for most of the chase, Tavin pointed the gun under his chin and on one occasion pointed it towards the sky. (Id.) Tavin eventually stopped, got off his motorcycle, and let it fall to the ground, while holding the gun in his right hand. (Id. ¶ 11.) Then Tavin walked backwards and raised his left arm with his palm face-up. (Id. ¶¶ 11–12.) Shortly thereafter, police fatally shot Tavin.[1] (Id.)

---

[1]     Neither party has alleged which police officer shot Tavin.

II.     Procedural Background

Plaintiffs filed their Complaint alleging unlawful use of force in violation of the Fourth Amendment on January 18, 2012. (Dkt. # 1.) In Plaintiffs' Original Complaint, they named Defendant police officers Reyes and Moreno as employees of the Boerne Police Department. Id.

On May 8, 2012, Defendants City of Boerne, Texas, and Officers J. Siemens and J. Gonzales—the other named Defendants—filed a Federal Rule of Civil Procedure 12(b)(2), 12(b)(6) and 12(e) motion and indicated that Officers Reyes and Moreno had been incorrectly identified as employees of the Boerne Police Department when they were in fact employees of the San Antonio Police Department. (Dkt. # 5 ¶ 2.)

Plaintiffs failed to timely respond to the motion to dismiss, and on October 24, 2012, the Court signed an order stating that if the Plaintiffs did not respond within fourteen days from the date of the order, the case would be dismissed for want of prosecution. (Dkt. # 6.) Plaintiffs filed a motion for more time to respond (Dkt. # 6), which the Court granted, allowing Plaintiffs until December 17, 2012 to respond to the motion to dismiss. (Dkt. # 10.) On December 17, 2012, Plaintiffs filed their response to Defendants Siemens's and Gonzales's motion to dismiss (Dkt. # 13).

3

That same day, Plaintiffs filed a Motion for Leave to File their First Amended Original Complaint to correctly identify the employer of Defendants Reyes and Moreno.  (Dkt. # 12 ¶ 4.)  Plaintiffs admitted in their motion that Defendants Reyes and Moreno had not been served nor had they made an appearance.  (Id. ¶ 6.)  On February 20, 2013, the Court granted Plaintiffs' Motion for Leave to File their First Amended Complaint to correctly identify Defendants Reyes and Moreno.  (Dkt. # 14.)  That same day, Plaintiffs filed their First Amended Complaint.  (Dkt. # 15.)  However, Plaintiffs again failed to serve Defendants Reyes and Moreno.

In the meantime, Defendants Siemens and Gonzales, police officers for the City of Boerne, filed a Motion to Dismiss based on qualified immunity.[2]  (Dkt. # 18.)  At the hearing on October 10, 2013, this Court specifically questioned Plaintiffs' counsel regarding the whereabouts of Defendants Reyes and Moreno and whether they had been properly served.  Plaintiffs' counsel admitted that they had not served either Defendant Reyes or Defendant Moreno.

---

[2] This Court denied Defendants Siemens's and Gonzales's Motion to Dismiss on October 25, 2013.  (Dkt. # 40.)  Construing the facts in a light most favorable to Plaintiffs as the Court is required to do when evaluating the merits of a Motion to Dismiss, the Court found that Tavin's threat of force could be said to have ceased at the time one of Defendants used deadly force because although Tavin's right hand was holding a gun at his side, his left hand was facing palm-up in a submissive gesture.  (Id. at 20.)  However, the Court cautioned that additional evidence in a motion for summary judgment may change the Court's analysis regarding whether the shooting was justified and as such, whether the officers were entitled to qualified immunity.  (Id. at 24–25.)

But instead of quickly serving Defendants Reyes and Moreno after the Court explicitly discussed the consequences of failing to properly serve Defendants, Plaintiffs delayed almost another month further.  On November 1, 2013—over seventeen months after learning about Defendants Reyes's and Moreno's employer on May 8, 2012, and twenty-two months after filing the original complaint on January 18, 2012—Plaintiffs issued summons for service on Moreno (Dkt. # 41) and Reyes (Dkt. # 42).

On November 26, 2013, Defendants Reyes and Moreno filed a Motion to Dismiss for failure to serve process within the time specified by Federal Rule of Civil Procedure 4(m) that is currently before the Court.  (Dkt. # 44.)  Plaintiffs filed a response.  (Dkt. # 48.)

## DISCUSSION

Federal Rule of Civil Procedure 4(m) provides:

> Time Limit for Service.  If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Pursuant to Rule 4(m), "when a plaintiff fails to serve a defendant within the 120-day period, the district court has two choices: It may either 'dismiss the action without prejudice . . . or direct that service be effected

5

within a specified time.'" Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996) (quoting Fed. R. Civ. P. 4(m)).  "The next portion of the rule qualifies the district court's choices, making an extension of time mandatory when the plaintiff shows good cause." Id.  Thus, when a district court considers the consequences regarding a plaintiff's lack of service within the requisite 120-day timeframe, "it must first determine whether good cause exists: if good cause is present, the district court must extend time for service; if good cause does not exist, the court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." Id.

I.      Good Cause

"When service of process is challenged, the serving party bears the burden of proving . . . good cause for failure to effect timely service." Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013) (quoting Sys. Signs Supplies v. U.S. Dep't of Justice, Wash., D.C., 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam)).  Proof of good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."  Additionally, some "showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required." Id.

To support their claim of good cause, Plaintiffs argue that "[w]aivers for service were mistakenly sent to Defendants Reyes and Moreno at the Boerne Police Department rather than to the correct San Antonio Police Department because Plaintiffs did not have any substantiating proof that indicated Defendants worked for any particular department."  (Dkt. # 48 at 2.)

However, pursuant to Fifth Circuit law, Plaintiffs' argument cannot satisfy the good-cause requirement under Rule 4(m) to extend time for service.  At best, Plaintiffs' error in verifying Defendants' employer amounts to inadvertence or mistake of counsel, both of which fail to meet the excusable neglect threshold.  See Thrasher, 709 F.3d at 511; see also Newby v. Enron Corp., 284 F. App'x 146, 149–50 (5th Cir. 2008) (rejecting the plaintiffs' claims that they had good cause for delay because they were unaware of defects in service and holding this amounted to inadvertence, mistake of counsel, and unfamiliarity with rules, all matters that fall short of the excusable neglect threshold).

In any case, Plaintiffs were notified that the San Antonio Police Department was the correct employer of Defendants Reyes and Moreno on May 8, 2012—over seventeen months before Plaintiffs properly served Defendants.  Plaintiffs' excuse may have satisfied the good-cause standard back in May 2012, but it falls short seventeen months later.  There is "no reasonable basis" for this

7

extensive delay. Thrasher, 709 F.3d at 511. Plaintiffs have not satisfied Rule 4(m)'s good cause exception for delaying service.

II.     The Court's Inherent Discretion

Nevertheless, even when good cause is lacking, the Court must decide whether to exercise its discretion to extend time for service. The 1993 Advisory Committee Note to Rule 4(m) states that the district court may consider whether the "applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4(m) advisory committee's note.

As a preliminary matter, the Court notes that if it were to grant Defendants' Motion, Plaintiffs' action would be barred by Texas's two-year statute-of-limitations period for § 1983 claims. See Rodriguez v. Holmes, 963 F.2d 799, 803 (5th Cir. 1992) (holding that because there is no federal statute of limitations for § 1983 claims, federal courts adopt their forum state's limitations period); Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (providing a two-year statute of limitations for personal injury actions). The limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Rodriguez, 963 F.2d at 803. The limitations period in this case commenced when Tavin was shot on December 2, 2010 and expired two years later on December 2, 2012. Therefore, because the statute of limitations has run on Plaintiffs' claims, any dismissal of

claims must be considered a dismissal with prejudice.  See Millan v. USAA General Indem. Co., 546 F.3d 321, 326 (5th Cir. 2008).

When the relevant statute of limitations bars a re-filed action and renders the dismissal in effect "with prejudice," this Court's discretion is more limited, and the Court must apply a "heightened standard."  Thrasher, 709 F.3d at 512–13 ("If the applicable statute of limitations likely bars future litigation, a district court's dismissal of claims under Rule 4(m) should be reviewed under the same heightened standard used to review a dismissal with prejudice."); Millan, 546 F.3d at 326 (same).

The heightened standard encompasses two inquiries.  First, was there "a clear record of delay" or "contumacious conduct" by the plaintiff?  Millan, 546 F.3d at 326.  If so, the court should consider whether one of three aggravating factors is present: (1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.  Id.  Second, would a lesser sanction (other than dismissal) better serve the interests of justice?

    A.    Clear Record of Delay or Contumacious Conduct

To warrant dismissal, a "clear delay" must last "longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity."  Thrasher, 709 F.3d at 513.  In Thrasher, the Fifth Circuit found "clear

9

delay" sufficient to warrant dismissal even after the applicable statute of limitations had run. There, the plaintiff filed his complaint on February 8, 2010. Id. at 510. On June 10, 2010—two days after the expiration of the 120-day period to service process—the district court ordered the plaintiff to show cause by June 21, 2010 why his case should not be dismissed for failure to timely serve the defendants. Id. Three days before the court-ordered deadline to respond to the order to show cause, the plaintiff requested an extension. Id. On June 22, 2010, the court granted the plaintiff's extension until July 1, 2010 to perfect service of process. Id. The plaintiff missed this deadline. Id. Eight days after the extended deadline passed, on July 9, 2010, the defendants filed a motion to dismiss. Id. The plaintiff did not respond to this motion for almost six months and did not perfect service until November 29, 2010 for one defendant and December 13, 2010 for the other—nearly five months after his motion to extend time for obtaining service and ten months after filing the complaint. Id. The district court dismissed the plaintiff's suit given the extensive delay. Id.

On appeal, the Fifth Circuit applied the "heightened standard" because the statute of limitations would have barred refiling another complaint. Id. at 512–13. The court held that even reviewing the claim under the heightened standard, "the record indicates clear delay." Id. at 513. The court recognized that the plaintiff delayed ten months before perfecting service on the defendants and that

during this time, there were prolonged periods of inactivity, and thus, dismissal with prejudice was warranted.  Id.

In the instant case, the record readily reveals that Plaintiffs did not perfect service for nearly two years after filing the original complaint.  (Compare Dkt. # 1 (filing original complaint on January 18, 2012), with Dkt. ## 42, 43 (issuing summons to Defendants Moreno and Reyes on November 1, 2013).)  In Thrasher, the Fifth Circuit held that a period of ten months from the date of filing the original complaint to effecting service constituted "clear delay."  709 F.3d at 513.  In this case, Plaintiffs' delay of twenty-two months is twice that of the delay in Thrasher and thus plainly evidences "clear delay."

The Court is sympathetic to Plaintiffs' excuse that they did not know the proper employers of the officers involved in Tavin's shooting.  However, once Plaintiffs learned that Defendants Reyes's and Moreno's employer was the City of San Antonio Police Department on May 8, 2012, they waited an additional seventeen months before perfecting service.  (Compare Dkt. # 5 ¶ 2 (Defendants Gonzales and Siemens notifying Plaintiffs that Defendants Reyes and Moreno were San Antonio Police Officers—not affiliated with the City of Boerne), with Dkt. ## 42, 43 (issuing summons to Defendants Reyes and Moreno on November 1, 2013).)   Plaintiffs even waited approximately ten months from filing an Amended Complaint listing the proper employer of Defendants Reyes and Moreno

11

to effecting service.  (Compare Dkt. # 12 (motion to amend complaint with the Defendants' correct names and employers on December 17, 2012), with Dkt. ## 42, 43 (issuing summons to Defendants Moreno and Reyes on November 1, 2013).)  And even when the Court specifically questioned Plaintiffs' counsel at the hearing on Defendants' Gonzales' and Siemens' Motion to Dismiss regarding the whereabouts of Defendants Reyes and Moreno and the consequences of failing to serve Defendants Reyes and Moreno, Plaintiffs still delayed almost a month further.  Plaintiffs' delay undoubtedly constitutes "clear delay."  See, e.g., Thrasher, 709 F.3d at 513 (holding that a failure to perfect service on the defendants for nearly ten months after filing complaint indicates clear delay); Gartin v. Par Pharm. Cos., Inc., 289 F. App'x 688, 694 (5th Cir. 2008) (a delay of seven months in serving one of the defendants is a clear record of delay); Sealed Appellant v. Sealed Appellee, 452 F.3d 415, 419 (5th Cir. 2006) (holding that missing the 120-day deadline by almost 600 days (twenty months) was a clear record of delay and not a simple inadvertence).

    B.    <u>Aggravating Factors</u>

A clear record of delay, however, is not the only consideration.  When courts dismiss cases with prejudice, they generally find at least one of three aggravating factors:  (1) delay caused by the plaintiff himself and not his attorney;

(2) delay caused by intentional conduct; or (3) actual prejudice to the defendant. See Millan, 546 F.3d at 326.

The record in this case does not contain any of the three aggravating factors listed above. First, arguably the delay in this case resulted from the actions of Plaintiffs' counsel—not Plaintiffs themselves. As outlined above, Plaintiffs' counsel has delayed to serve Defendants Reyes and Moreno for nearly two years after filing Plaintiffs' Complaint, seventeen months after learning of Defendants' proper employer, ten months after filing an amended complaint naming their proper employer, and a month after the Court specifically warned Plaintiffs' counsel about the failure to effect service.

Second, although Plaintiffs' counsel has caused delay, there is no record that Plaintiffs' counsel is intentionally engaging in delay. The Court is aware of Plaintiffs' counsel's back and knee injuries, which have apparently required daily physical therapy. (Dkt. # 7 ¶ 3.) The Court is also aware of Plaintiffs' counsel's "various matters, including many disputes, which have taken up numerous hours." (Id.) But these explanations cannot excuse his serious disregard for the Local Rules for the Western District of Texas and this Court's deadlines. Aside from the aforementioned delay in service of process, Plaintiffs' counsel has a habitual practice of delay in general:

    1.    Plaintiffs' counsel failed to timely respond to Defendants Siemens and Gonzales's Motion to Dismiss filed on May 8,

2012 (Dkt. # 5).  Pursuant to Local Rule 7(e), Plaintiffs were required to respond within fourteen days.  Instead, Plaintiffs' counsel took no action for 170 days.  Finally, the Court, in the interests of justice, issued an Order to Show Cause directing Plaintiffs to respond to Defendants' Motion to Dismiss by November 7, 2012.  (Dkt. # 6.)  Despite the Court giving Plaintiffs another chance to respond, Plaintiffs' counsel requested another extension of time (until December 17, 2012), which the Court granted.

2. Despite the fact that Tavin was shot on December 2, 2010—three years ago—Plaintiffs' counsel has failed to conduct discovery by the court-ordered deadline of September 6, 2013.  At the hearing for the instant motion to dismiss, Defendants' counsel averred that no discovery in this case has taken place to date.

3. Plaintiffs' counsel did not timely respond even to the instant Motion to Dismiss.  Defendants filed their Motion on November 26, 2013.  (Dkt. # 44.)  Plaintiffs' counsel requested an extension of time to respond.  (Dkt. # 45.)  The Court granted Plaintiffs' Motion and stated, "Plaintiffs' response to Defendants' Motion to Dismiss is due January 9, 2014."  On January 10, 2014, a day after the extended deadline had expired, Plaintiffs' counsel again asked for another extension (Dkt. # 47), which the Court granted.

Although the Court finds that Plaintiffs' counsel has not intentionally delayed serving Defendants, nor has he intentionally delayed prosecuting this case, the Court emphasizes that Plaintiffs' counsel's current practices, which have culminated in a lengthy delay, are unacceptable.

Third, although there has been a clear record of delay, the current record before the Court does not reveal that Defendants have suffered actual prejudice.  In fact, at the hearing, Defendants' counsel admitted that Defendants

14

Reyes and Moreno have not discovered any evidence to suggest that they have suffered actual prejudice.

  C. <u>Lesser Sanctions</u>

    Thus, the lack of any aggravating factors warrants imposing a lesser sanction than dismissal.  See <u>Tello v. Comm'r</u>, 410 F.3d 743, 744 (5th Cir. 2005) (holding that the Fifth Circuit generally only affirms dismissals with prejudice if one of the three aggravating factors is present).  Because dismissal with prejudice is an "extreme sanction that deprives a litigant of the opportunity to pursue his claim," a district court should consider whether a lesser sanction would "better serve the interests of justice" before dismissing a case with prejudice.  <u>Millan</u>, 546 F.3d at 326 (emphasis added); <u>Berry v. CIGNA</u>, 975 F.2d 1188, 1191 (5th Cir. 1992) (holding that the Fifth Circuit affirms dismissals with prejudice only when "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile").  Lesser sanctions include: "assessments of fines, costs, or damages against the plaintiff, . . . conditional dismissal, dismissal without prejudice, and explicit warnings.  <u>Thrasher</u>, 709 F.3d at 514 (quoting <u>Rogers v. Kroger Co.</u>, 669 F.2d 317, 321–22 (5th Cir. 1982)).

Here, lesser sanctions would better serve the interests of justice. This case involves the shooting death of Plaintiffs' son. Dismissing Plaintiffs' claims against Defendants Reyes and Moreno solely because of their counsel's neglect in serving Defendants is unreasonably harsh, especially since Defendants' counsel honestly acknowledged that he is currently unaware of any evidence suggesting Defendants have suffered actual prejudice. However, this order serves as an explicit warning to Plaintiffs' counsel that the Court will not tolerate further delay in prosecuting this case.

## CONCLUSION

Given Defendants' counsel's candid admission, which this Court appreciates, the Court **DENIES** Defendants' Motion to Dismiss **WITHOUT PREJUDICE** (Dkt. # 44). If, during discovery, Defendants Reyes and Moreno discover any evidence that suggests Defendants have suffered actual prejudice because of Plaintiffs' delay in service of process, the Court will consider another motion to dismiss.

IT IS SO ORDERED.

DATED: San Antonio, Texas, February 10, 2014.

_____
David Alan Ezra
Senior United States Distict Judge